UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO REYES,<br><br>            Petitioner,<br><br>      v.<br><br>GIGI MATTESON,<br><br>            Respondent. | Case No. 1:23-cv-00958-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Isidro Reyes is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

**I.**

**BACKGROUND**

On October 4, 2019, Petitioner was convicted by a jury in the Tulare County Superior Court of murder and attempted murder. The jury also found true special allegations regarding criminal street gang and firearm enhancements. (3 CT[1] 601–03.) Petitioner was sentenced to an imprisonment term of eighty-two years to life. (3 CT 639, 651.) On August 1, 2022, the California Court of Appeal, Fifth Appellate District vacated the criminal street gang and firearm enhancements, but otherwise affirmed the convictions. People v. Reyes, No. F080133, 2022 WL

---
[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent. (ECF No. 11.)

3030799, at *15 (Cal. Ct. App. Aug. 1, 2022). On October 26, 2022, the California Supreme Court denied the petition for review. (ECF Nos. 15-2, 15-3.) On March 27, 2023, the Tulare County Superior Court resentenced Petitioner to an imprisonment term of life with the possibility of parole. (ECF No. 15-6.)

In the instant federal petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) the trial court's erroneous admission of Petitioner's interrogation, in violation of Miranda; (2) the trial court's erroneous failure to bifurcate the gang-related enhancements; (3) the erroneous jury instruction regarding witness certainty; and (4) cumulative error. (ECF No. 1.) Respondent has filed an answer. (ECF No. 16.) To date, no traverse has been filed, and the time for doing so has passed.

## II.

## STATEMENT OF FACTS[2]

> This case involves two victims. One was killed, the other survived. As the victims were walking down the side of a road, Gomez and Reyes pulled up behind them in a car. Gomez exited, pointed a shotgun at one victim and pulled the trigger but nothing happened. That victim ran away. Gomez then shot and killed the other victim.
>
> According to the surviving victim, he had previously seen the same car pass him multiple times on the road earlier that day. He recognized Reyes as the driver and reported that fact along with a description of the suspect car to law enforcement.
>
> Law enforcement officers began surveilling Reyes's nearby residence a few hours after the shooting. Officers noticed a vehicle matching the suspect description arrive at the property but could not "identify ... any occupants of the vehicle when they approached the residence." A short while later, the vehicle left the property.
>
> Officers seized the vehicle; Gomez was the lone occupant. The surviving victim subsequently identified the car as involved in the shooting and Gomez as the shooter. Reyes was later arrested the same day.[3]
>
> Reyes was interviewed by officers. Reyes denied leaving his house that day and claimed several people were home with him but never mentioned Gomez.

---

[2] The Court relies on the California Court of Appeal's August 1, 2022 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

[3] The circumstances surrounding Reyes's arrest are unclear from the record. The facts are he was arrested and claimed to be home the entire day. The best description of Reyes's arrest is the following question and answer:
  "Q: Now, a search warrant was conducted at your house. Do you remember that?
  "A: Well, when they arrested my son, they didn't have no warrant -- no warrant to take my son yet. So I don't know."
This exchange suggests Reyes was arrested in the home during the search.

>   Officers searched Reyes's residence. They found ammunition on the property matching the brand and model used in the shooting—Winchester PDX.[4]
>
>   One witness testified Gomez and Reyes were together in the suspect vehicle *one day prior* to the shooting. The witness observed Gomez and Reyes remove a clothed object from the vehicle's trunk. The witness's claim was impeached by an officer who interviewed the witness prior to trial. According to the officer, the witness observed Gomez and Reyes together in the suspect vehicle remove an unknown object from the trunk *a few hours after* the shooting.
>
>   Testimony from a prior hearing was read into the record. This testimony corroborated the fact Gomez and Reyes were together in a car shortly after the shooting and removed an unknown object from its trunk.
>
>   Various witnesses testified about the gangs in Tulare County. The Norteño gang is active in Tulare County. One way to join the gang is to "commit a crime" and "spill blood against the gang's enemy ...."
>
>   The Norteño gang's primary activities include "homicide[and] attempted homicide ...." The Norteño gang had previously committed manslaughter and assault with a firearm in two documented cases.[5] The victims of these documented crimes were rival gang members. The evidence indicated Reyes was a Norteño during the shooting while Gomez was a Norteño associate.
>
>   While Gomez was incarcerated following his arrest, he ascended to full Norteño membership. Evidence proving his ascension consisted of "kite" possession and connection to objects consistent with weapons. A kite "is a handwritten note by an inmate." Gang-related kites are distinctive. On one occasion, Gomez destroyed gang kites. On another occasion, he was caught smuggling kites. Only gang members are entrusted to possess kites.
>
>   An expert witness testified about hypothetical situations involving a gang. He opined a scenario similar to the facts in this case benefits the gang by enhancing its reputation for violence. The expert explained the crime benefits the gang even if the victim is not gang affiliated. He also believed such a crime was in association with a gang due to the actors' affiliation to the gang and the gang's relationship to the territory.

Reyes, 2022 WL 3030799, at *1–2 (footnotes in original).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed

---

[4] There was no forensic testing to match the ammunition.

[5] These documented crimes were introduced to establish a pattern of criminal gang activity. (See § 186.22, subd. (e).)

3

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. Admission of Petitioner's Statement

In his first claim for relief, Petitioner asserts that the trial court prejudicially erred in admitting his statement, in violation in Miranda v. Arizona, 384 U.S. 436 (1966). (ECF No. 1 at 5.)[6] Respondent argues that the state court reasonably concluded that Petitioner's statement was admissible after his implied waiver of rights. (ECF No. 16 at 15.) This claim was raised on direct appeal in the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the decision of the California Court of Appeal.

In denying Petitioner's Miranda claim, the California Court of Appeal stated:

> Reyes argues the court erred in admitting a portion of his interview with investigators. He claims the evidence was insufficient to show he understood his

---

[6] Page numbers refer to the ECF page numbers stamped at the top of the page.

*Miranda* rights. The People argue Reyes "understood and knowingly waived [his] rights." We agree with the People.

### A. Additional Background

Investigators interviewed Reyes after his arrest. An officer informed Reyes of his rights as follows:

> "[Y]ou have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you ... while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish.... [Y]ou can decide at any time to exercise these rights and not ... answer any questions okay? So you had ... mentioned to me that you work for a ...."

Notably, the officer never asked if Reyes understood his rights and instead immediately jumped into the interrogation.

As the interview progressed, Reyes denied leaving his house the day the shooting occurred. He mentioned he was at home with several family members, listed them, but did not mention Gomez. Ultimately, Reyes invoked his right to remain silent.

Reyes moved to exclude his denials from evidence. In ruling on the motion, the court stated, in part:

> "[I]t seems to me that one of the pieces that goes into the calculus in determining whether or not there's an understanding waiver is the assertion of the rights as well. He knew he -- the defendant knew when he wanted to pull the plug on the interview. When they started talking to him about the facts of the case, beyond just basic stuff about, 'Who lives here?' 'What do you guys do?' You know, 'Where were you?' It's starting to get close to interrogating questions regarding the incident, and, hey, you better come clean kind of stuff. You know, 'Confession is good for the soul.' 'What about your mom and the dad?' All of the techniques that they used are demonstrated here in trying to overbear his will and he holds firm. The Court's view is that this defendant knowingly and understandingly waived his right when the officer said, 'I want to ask you some stuff about where you were today,' and he says, 'Okay.' The Court views that as an implied waiver given the whole context of the statement where he was perfectly capable to exercise his rights, which he did repeatedly in the face of some pretty persistent interrogation ...."[7]

The interview depicting Reyes's denials was then played for the jury.[8]

### B. Analysis

The prosecution bears "the burden to establish waiver by a preponderance of the evidence." (*Berghuis v. Thompkins* (2010) 560 U.S. 370, 383-384 (*Berghuis*).) "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a

---

[7] Technically, this quote is from the court's tentative ruling. After further argument, it appears there was no formal ruling to admit the evidence.

[8] Reyes's invocation of the right to silence was excluded, as were all subsequent statements in the interview.

7

suspect's statement into evidence." (*Id.* at p. 384.) "[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.' " (*Ibid.*)

"If the [prosecution] establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights. [Citation.] The prosecution must make the additional showing that the accused understood these rights." (*Berghuis, supra*, 560 U.S. at p. 384.) "The critical question with respect to waiver is whether it was knowing and voluntary, which is 'directed at' " evaluating "state of mind." (*People v. Flores* (2020) 9 Cal.5th 371, 417 (*Flores*).) " '[T]he question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." ' " (*People v. Parker* (2017) 2 Cal.5th 1184, 1216.)

" 'In reviewing constitutional claims of this nature, it is well established that we accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence. We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained.' " (*Flores, supra*, 9 Cal.5th at p. 418.)

The record in this case established an implied waiver. The best evidence for waiver is the fact Reyes actually exercised his right to remain silent. Invoking his right to remain silent necessarily implies he understood the right. This establishes " 'a course of conduct indicating waiver.' " (*Berghuis, supra*, 560 U.S. at p. 384; *People v. Krebs* (2019) 8 Cal.5th 265, 302 ["When a suspect ' "having heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them." ' "].) The *Miranda* claim lacks merit.[9]

Reyes, 2022 WL 3030799, at *11–12 (footnotes in original).

Before a suspect can be subjected to custodial interrogation, he must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda, 384 U.S. at 479. After the Miranda warnings have been given and an opportunity afforded the suspect to exercise his rights, a suspect "may knowingly and intelligently waive these rights and agree to answer questions or make a statement." Miranda, 384 U.S. at 479. "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice

---

[9] Further bolstering the fact Reyes understood his right to remain silent is the fact he invoked it more than three dozen times. Regrettably, the investigators did not scrupulously honor Reyes's right to remain silent. Instead, they persisted in interrogating Reyes, going so far as to explicitly deny requests to terminate questioning. Reyes did not budge and, in any event, all statements after the initial invocation, i.e., the repeated invocations, were excluded from evidence.

rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Berghuis v. Thompkins, 560 U.S. 370, 382–83 (2010) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The prosecution bears the burden of establishing a valid waiver by a preponderance of the evidence. Thompkins, 560 U.S. at 384. To determine whether a waiver was voluntary and knowing, reviewing courts must consider the totality of the circumstances, including the accused's background, experience, and conduct. See Burbine, 475 U.S. at 421; North Carolina v. Butler, 441 U.S. 369, 374–75 (1979); Cox v. Del Papa, 542 F.3d 669, 675 (9th Cir. 2008).

"The prosecution . . does not need to show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." Thompkins, 560 U.S. at 384 (citing Butler, 441 U.S. at 376). "*Butler* made clear that a waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" Thompkins, 560 U.S. at 384 (quoting Butler, 441 U.S. at 373). "If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights. The prosecution must make the additional showing that the accused understood these rights." Thompkins, 560 U.S. at 384 (citation omitted). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Id. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Id.

The state court record supports the California Court of Appeal's determination that Petitioner voluntarily and knowingly waived his Miranda rights, albeit impliedly, through Petitioner's "silence, coupled with an understanding of his rights and a course of conduct indicating waiver." Butler, 441 U.S. at 373. The state court reasonably found that Petitioner understood his Miranda rights because after answering the officer's initial questions, Petitioner subsequently invoked his right to remain silent more than three dozen times, which "necessarily

1  implies he understood the right." Reyes, 2022 WL 3030799, at *12. By answering the officer's
2  initial questions, (2 CT 493–505), Petitioner engaged in "a 'course of conduct indicating waiver'
3  of the right to remain silent." Thompkins, 560 U.S. at 386 (quoting Butler, 441 U.S. at 373).
4  Finally, Petitioner "does not claim that police threatened or injured him during the interrogation
5  or that he was in any way fearful," Thompkins, 560 U.S. at 386, and there is no evidence
6  Petitioner's initial answers were coerced, (2 CT 493–505).

7        "[W]e must give even greater deference under AEDPA when determining whether the
8  case-specific application of a general standard, such as the 'totality of the circumstances' test
9  [governing Miranda waivers], provides a reasonable basis for a state court decision." Cook v.
10 Kernan, 948 F.3d 952, 968 (9th Cir. 2020). Therefore, the Court finds that the state court's
11 determination that Petitioner voluntarily and knowingly waived his Miranda rights was not
12 contrary to, or an unreasonable application of, clearly established federal law, nor was it based
13 on an unreasonable determination of fact. The state court's decision was not "so lacking in
14 justification that there was an error well understood and comprehended in existing law beyond
15 any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, the Court
16 finds that Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

17     **B. Bifurcation**

18       In his second claim for relief, Petitioner asserts that the trial court's failure to bifurcate
19 the gang-related enhancements requires reversal of the guilty verdict because the gang evidence
20 tainted the trial. (ECF No. 1 at 7.) Respondent argues that this claim cannot succeed because it is
21 not cognizable on federal habeas review and no clearly established federal law requires
22 bifurcation under the same or similar circumstances. (ECF No. 16 at 20.) This claim was raised
23 on direct appeal in the California Court of Appeal, Fifth Appellate District, which denied the
24 claim in a reasoned decision. The claim was also raised in the petition for review, which the
25 California Supreme Court summarily denied. As federal courts "look through" summary denials
26 and review "the last related state-court decision that does provide a relevant rationale," Wilson,
27 138 S. Ct. at 1192, this Court will examine the decision of the California Court of Appeal.
28 ///

In denying Petitioner's bifurcation claim, the California Court of Appeal stated:

> After the trial proceedings concluded in this case, the Legislature enacted AB 333. AB 333 added section 1109 which, as relevant, requires upon request a trial court to bifurcate gang enhancements (§ 186.22, subds. (b) & (d)) from charged crimes. It also amended section 186.22 by increasing the threshold evidence necessary to prove not only the gang enhancement but the existence of a criminal street gang itself.[10]
>
> Gomez claims section 1109 applies retroactively and requires us to reverse the entire judgment. Reyes joins in essence.
>
> The People argue section 1109 does not apply retroactively. As for the amendments to section 186.22, the parties agree they apply retroactively and are prejudicial. E. [sic]
>
> We do not address whether section 1109 applies retroactively because we conclude nonbifurcation was harmless. (See *People v. E.H.* (2022) 75 Cal.App.5th 467, 480.) We find the amendments to section 186.22 apply retroactively. Having reviewed the record, we agree with the parties, including the People, the amendments to section 186.22 justify vacating the gang enhancements.
>
> **A. Retroactivity**
>
> "[A]bsent evidence to the contrary, [we presume] the Legislature intended amendments to statutes that reduce punishment for a particular crime to apply to all whose judgments are not yet final on the amendments' operative date. [Citations.] This principle also applies when an enhancement has been amended to redefine to an appellant's benefit the conduct subject to the enhancement." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344 (*Lopez*).)
>
> The rule applies "to statutes that merely ma[k]e a reduced punishment *possible*." (*People v. Frahs* (2020) 9 Cal.5th 618, 629.) It " 'rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.)
>
> There is no doubt AB 333's amendments to section 186.22 apply retroactively. Those amendments "increase[ ] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement ...." (*Lopez, supra*, 73 Cal.App.5th at p. 344.) It is an ameliorative amendment. (*Id.* at p. 343.)
>
> As for section 1109, we do not address whether it applies retroactively, because we will conclude any error is harmless.[11]

---

[10] When relying on gang benefit to prove the enhancement itself, AB 333 now requires more than a "reputational" benefit. (§ 186.22, subd., (g).) See *People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032—1033 for a more complete summary of amendments relating to proving a gang's existence (§ 186.22, subd. (f)).

[11] Gomez and Reyes also suggest section 1109 error is reversible per se. The argument is largely based on *People v. Burgos* (2022) 77 Cal.App.5th 550, review granted July 13, 2022, S274743. But *Burgos* never held section 1109 error is reversible per se—its reference to structural error, i.e., reversal per se, is pure dicta. (See *id.* at p. 568 ["This circumstance likely constitutes 'structural error' ...."].) Indeed, for good reason no case has held section 1109 error is reversible per se—there is no reason to believe the issue escapes review. (Cf. *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 819 [failure to grant severance reviewable for prejudice]; *People v. Henderson* (2020) 9

11

### B. Prejudice

We next analyze prejudice and first discuss section 1109. Because we find the section 1109 issue harmless, we turn to the section 186.22 amendments and explain why it is necessary to vacate the gang enhancements.

### i. Section 1109

Gomez and Reyes argue "prejudicial gang evidence ... undermine[d] the trial's fairness." Accordingly, they claim the prejudice should be assessed for harmlessness beyond a reasonable doubt. The People assert the issue is reviewable under the reasonable-probability-for-a-more-favorable-result standard.[12] We agree with the People.

Although it is true in some cases a person's due process rights could be violated, triggering review for harmlessness beyond a reasonable doubt, there is no due process violation in this case. The evidence here was properly admitted and there is no reason to conclude it rendered the trial fundamentally unfair. Nothing prevented Gomez or Reyes from challenging the evidence or presenting their own defense. In fact, they did so rigorously.[13]

Turning to the reasonable probability of a more favorable result, we find lack of bifurcation harmless. The most significant evidence admitted in this trial which would have been excluded in a bifurcated proceeding are the Norteño gang predicate offenses— manslaughter and firearm assault. Much of the other evidence would have been properly admitted even in a bifurcated trial because gang evidence "is often relevant to, and admissible regarding, the charged offense. Evidence of ... gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*Hernandez, supra*, 33 Cal.4th at p. 1049; accord *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1129—1130.) Such is the case here.

The crimes in this case were tried as a gang initiation. Based on the evidence presented, the crime occurred to initiate Gomez into the Norteño gang. To reiterate, properly admitted gang evidence proved both who committed the crime and why.

Beyond the gang evidence, the case against Gomez and Reyes was strong. Gomez was identified as the shooter without hesitation. Reyes was identified as the driver without hesitation. Both were located near the crime scene. Both were connected to property containing ammunition matching that used in the shooting. The gang

---

Cal.5th 1013, 1029 [erroneously admitted confession reviewable for prejudice]; *People v. Gonzalez* (2021) 12 Cal.5th 367, 398—399 [erroneously admitted forensic evidence reviewable for prejudice]; *People v. Partida* (2005) 37 Cal.4th 428, 439 [evidence resulting in "*fundamentally unfair*" trial reviewable for prejudice].) We hold, assuming section 1109 applies retroactively, the issue is reviewable for prejudice.

[12] To reiterate, Gomez also argues the judgment is reversible "per se." The People claim section 1109 does not apply retroactively. We do not address whether section 1109 applies retroactively, conclude reversal per se is unwarranted, and instead focus on each party's alternative arguments relative to prejudice.

[13] Gomez suggests his due process rights were violated because the gang evidence was "inflammatory" and "likely to elicit an emotional reaction" from the jury. We disagree. We have already concluded the evidence was properly admitted to prove motive. The trial was not fundamentally unfair.

12

evidence added little to these facts. There is no reason to believe the nondescript predicate offenses improperly tipped the scales.[14] For these reasons, we find the section 1109 bifurcation issue harmless.[15] 26 Cal.4th at p. 852.) [sic]. There is no reason to believe this presumption fails.

### ii. Section 186.22

"Although AB 333 transforms section 186.22 in several respects, we focus on one change in particular. To prove the existence of a criminal street gang itself, section 186.22, subdivision (f), requires proof of 'a pattern of criminal gang activity.' 'The offenses comprising a pattern of criminal gang activity are referred to as predicate offenses.' (*People v. Valencia* (2021) 11 Cal.5th 818, 829 (*Valencia*).) [¶] Prior to AB 333, it was unnecessary to prove predicate offenses were gang related. [Citation.] Now, the law requires 'the [predicate] offenses [to] commonly benefit[ ] a criminal street gang, and the common benefit of the offense is more than reputational ....' [¶] As now defined by statute, there was no [competent] evidence the predicate offenses proven at trial commonly benefitted a gang. (See § 186.22, subd. (g) [defining what constitutes a more than reputational common benefit].)" (*People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822–823, fns. omitted.) This is true because, as Gomez points out, the evidence describing the predicate offenses in this case violated the right to confrontation as interpreted by *Valencia, supra*.[16] The People concede. On this basis, we vacate the gang enhancements.[17]

Reyes, 2022 WL 3030799, at *12–14 (footnotes in original).

To the extent Petitioner asserts a violation of California Penal Code section 1109, the Court finds a claim alleging a violation of state law is not cognizable in federal habeas corpus. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."); Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's

---

[14] On this point, Reyes concedes much of the gang evidence would have been admitted in a bifurcated proceeding. But he claims the predicate offenses, the gang's primary activities, and the expert witness's opinions would have been excluded. He concludes "this extraneous evidence must have scared the dickens out of the jurors selected to try this case." We disagree for the reasons explained. Even if we agree the primary activity and opinion evidence would have been excluded in a bifurcated trial, their presentation in this case was not egregious, inflammatory, or provocative.

[15] The court also instructed the jury the gang evidence was admissible only to prove, knowledge, intent, motive, and purpose. The jury could not "conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime." "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*Sanchez, supra*, [sic].

[16] Specifically, *Valencia, supra*, explains "the particular facts offered to prove predicate offenses as required by [section 186.22] are not the sort of background hearsay information about which an expert may testify. Competent evidence of those particulars is required." (*Valencia, supra*, 11 Cal.5th at p. 839.) Because the record in this case belies *Valencia*, it does not meet this standard and does not satisfy AB 333. The People concede reversible error in this case.

[17] Vacating the gang enhancements requires us to vacate the section 12022.53 enhancement in Reyes's case because it applies only if the gang enhancement is found true. (§ 12022.53, subd. (e).) The People may retry all vacated enhancements.

criminal judgment susceptible to collateral attack in the federal courts."); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) ("We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus." (citations omitted)). Moreover, the Supreme Court has observed that "[t]wo-part jury trials . . . have never been compelled by this Court as a matter of constitutional law," Spencer v. Texas, 385 U.S. 554, 568 (1967), and the Ninth Circuit has held that "no clearly established federal law creates a right to bifurcate a trial," Zavala v. Holland, 809 F. App'x 370, 373 (9th Cir. 2020). Accordingly, Petitioner's bifurcation claim does not implicate federal law.

Based on the foregoing, the California Court of Appeal's denial of Petitioner's bifurcation claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The state court's decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

**C. Witness Certainty Instruction**

In his third claim for relief, Petitioner asserts that the trial court erroneously instructed the jury regarding the witness certainty factor in CALCRIM No. 315, in violation of Petitioner's right to due process. (ECF No. 1 at 8.) Respondent argues that the state court's rejection of this claim was reasonable. (ECF No. 16 at 23.) This claim was raised on direct appeal in the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the decision of the California Court of Appeal.

In denying the instructional error claim, the California Court of Appeal stated:

> Identification was hotly contested at trial. Gomez argues the eyewitness jury instruction, CALCRIM No. 315, "violates the Constitution's guarantee of due process of law" because it includes "an eyewitness's level of certainty" as a valid consideration. Reyes joins. The People contend the argument is forfeited. They

> also contend any error is harmless. We simply conclude the instruction did not violate due process.
>
> **A. Additional Background**
>
> Both defense counsel heavily challenged the surviving victim's identification of Gomez and Reyes as the perpetrators. They also attempted to impugn the investigating officers' techniques by undermining the identification procedures.
>
> The court subsequently instructed the jury with CALCRIM No. 315. In part, the instruction states, "In evaluating identification testimony, consider the following questions ...." It then lists more than one dozen factors including, "How certain was the witness when he or she made an identification?"
>
> **B. Analysis**
>
> The California Supreme Court recently held "nothing in CALCRIM No. 315's instruction on witness certainty ... operates to 'lower the prosecution's burden of proof.' " (*People v. Lemcke* (2021) 11 Cal.5th 644, 657.) It also found listing eyewitness certainty as one factor to evaluate does not render a trial fundamentally unfair. (*Id.* at p. 646.) Finally, it noted the defense had the opportunity to, and actually did, contest eyewitness identification. (*Id.* at p. 660.) This case is no different.
>
> Both Gomez and Reyes vigorously examined the surviving victim's identification. They questioned the identification itself by pointing out several inconsistencies[18] and challenged the process underlying the identification by highlighting suggestiveness.
>
> Accordingly, this claim fails because the instruction is not constitutionally defective and Gomez had a fair opportunity to argue misidentification.

Reyes, 2022 WL 3030799, at *8–9 (footnote in original).

A federal court's inquiry on habeas review is not whether the challenged instruction "is undesirable, erroneous, or even 'universally condemned,' but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). "In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." Middleton v. McNeil, 541 U.S. 433, 437 (2004). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Id. The pertinent question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (internal quotation marks

---

[18] For example, they emphasized inconsistencies in describing the vehicle and pointed out statements the surviving victim made for the first time at trial relative to previous encounters with Gomez.

15

1  omitted) (quoting Cupp, 414 U.S. at 147). "It is well established that the [ailing] instruction 'may
2  not be judged in artificial isolation,' but must be considered in the context of the instructions as a
3  whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

In an unpublished decision, the Ninth Circuit has held that because a California jury instruction that "merely identified the certainty of a witness as one of several factors the jury could consider in evaluation credibility" did not "'by itself so infect[] the entire trial that the resulting conviction violates due process,' the state court's denial of relief on these claims was not 'contrary to' or an 'unreasonable application of' clearly established federal law." Mainor v. Hornung, 113 F. App'x 247, 249 (9th Cir. 2004) (citations omitted). Additionally, the Supreme Court has held that "the factors to be considered in evaluating the likelihood of misidentification include . . . the level of certainty demonstrated by the witness at the confrontation[.]" Neil v. Biggers, 409 U.S. 188, 199 (1972). "Given the fact that the Supreme Court has identified the certainty factor as one to be considered in evaluating the likelihood of misidentification, it stands to reason that instructing the jury with the certainty factor in CALCRIM No. 315 cannot violate due process." Gonzalez v. Montgomery, No. CV 22-03313 MWF (RAO), 2022 WL 17345915, at *8 (C.D. Cal. Sept. 29, 2022) (collecting cases holding the same), report and recommendation adopted, 2022 WL 17340881 (C.D. Cal. Nov. 30, 2022).

Based on the foregoing, the state court's denial of Petitioner's instructional error claim regarding witness certainty was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on this ground, and the claim should be denied.

**D. Cumulative Error**

In his fourth claim for relief, Petitioner asserts that cumulative error infected the trial with unfairness and resulted in a denial of due process. (ECF No. 1 at 10.) Respondent argues that the state court reasonably concluded that cumulative error did not result in a denial of due process.

16

(ECF No. 16 at 27.) This claim was raised on direct appeal in the California Court of Appeal, Fifth Appellate District, which denied the claim, stating: "Gomez and Reyes argue reversal is appropriate due to cumulative prejudice from multiple errors. Having found no errors, we reject this claim." Reyes, 2022 WL 3030799, at *12 (Cal. Ct. App. Aug. 1, 2022). The claim was also raised in the petition for review, which the California Supreme Court summarily denied. As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the decision of the California Court of Appeal.

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. . . . even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298, 302–03, 290 n.3 (1973)). The Ninth Circuit has "granted habeas relief under the cumulative effects doctrine when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case." Ybarra v. McDaniel, 656 F.3d 984, 1001 (9th Cir. 2011) (citing Parle, 505 F.3d at 933). For example, in Parle, "*all* of the improperly excluded evidence . . . supported Parle's defense that he lacked the requisite state of mind for first-degree murder; at the same time, *all* of the erroneously admitted evidence . . . undermined Parle's defense and credibility and bolstered the State's case." Parle, 505 F.3d at 930.

Here, the Court has found that the state court's denials of Petitioner's three specific claims for habeas relief were not contrary to, or an unreasonable application of, clearly established federal law. "Because Petitioner has failed to establish multiple errors of constitutional magnitude, there can be no accumulation of prejudice amounting to a denial of due process[.]" Lopez v. Allen, 47 F.4th 1040, 1053 (9th Cir. 2022). Accord Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."). Therefore, the state court's denial of Petitioner's cumulative error claim regarding witness certainty was not contrary to, or an

unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on this ground, and the claim should be denied.

## V.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 12, 2023**        /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE